UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL TURNER, KENYATTA STARKS and ANGEL JOHNSON, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 17 C 6507 |
| v. | ) ) ) | Judge Jorge L. Alonso |
| CITY OF CHICAGO BOARD OF EDUCATION, THE CHICAGO PUBLIC SCHOOLS OFFICE OF THE INSPECTOR GENERAL, and NICHOLAS SCHULER, individually, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Believing they had been discriminated against on the basis of their race, plaintiffs Angel Turner ("Turner"), Kenyatta Starks ("Starks") and Angel Johnson ("Johnson") filed against defendants City of Chicago Board of Education ("the Board"), the Chicago Public Schools Office of the Inspector General (the "Inspector General's Office") and Nicholas Schuler ("Schuler") individually a fifteen-count amended complaint. Before the Court are motions to dismiss filed by: (1) the Board [48]; and (2) Schuler and the Inspector General's Office [52]. For the reasons set forth below, the Court grants the motion to dismiss [52] filed by Schuler and the Inspector General's Office. The Court grants in part and denies in part the Board's motion to dismiss [48].

**I.   BACKGROUND**

The following facts are from plaintiff's amended complaint and are taken as true. On October 6, 2016, the Inspector General's Office issued a report that accused plaintiffs (falsely,

according to plaintiffs) of fraudulently manipulating attendance records at public high schools in Chicago. Due to the report, Chicago Public Schools (CPS) placed a "Do Not Hire" notice in each plaintiff's file. The reason each plaintiff had a file with CPS was because each was a former employee. The effect of the "Do Not Hire" notices is, predictably, that CPS will not rehire any of these plaintiffs in the event any of them applies for a position with CPS. CPS is run by defendant Board.

Turner is "employed by the Academy for Urban School Leadership ("AUSL") as a Director of School Leadership." (Am. Complt. p. 3 ¶ 14). In that position, she "was assigned to oversee" Orr Academy High School.[1] (Am. Complt. p. 4 ¶ 18). Orr Academy High School was one of the high schools investigated by the Inspector General's Office with respect to attendance-record manipulation. Turner alleges that the Inspector General's Office interviewed her in May 2016 and, when it released its report in October, accused her falsely of negligent supervision of Orr Academy. At the same time, CPS placed a "Do Not Hire" notice in Turner's file.

Plaintiff Starks "is employed as the Director at Chicago International Charter School Longwood" ("Longwood"). (Am. Complt. p. 18 ¶ 14). Starks alleges that, at some point (she does not say when), she was the Principal at Marshall High School. Like Turner, Starks was contacted by the Inspector General's office in connection with its investigation of attendance-record manipulation. When it issued its report, the Inspector General's office falsely accused Starks of falsifying attendance records at Marshall High School. As with Turner, CPS placed a "Do Not Hire" notice in Starks's file.

Plaintiff Johnson is "employed as the Assistant Director" at Longwood. (Am. Complt. p. 31 ¶ 14). Earlier in her career, Johnson had been (she does not say when) a Vice Principal and

---

[1] It is not clear from the Amended Complaint what Turner's duties were.

Principal at Marshall High School.  Like the other plaintiffs, Johnson was contacted by the Inspector General's Office in connection with the attendance-record investigation.  Before the Inspector General's Office issued its report, Johnson was contacted by the President of a Local School Council about an open position as Principal at Robert Black Magnet School.  Johnson applied but was later told by the President of the Local School Council that the Local School Council was not "advance[ing plaintiff's] resume to the next level" because she had learned from one or more defendants that "something was happening with Johnson and her former school." (Am. Complt. p. 33 ¶ 31).  The next month, the Inspector General's Office issued its report falsely accusing Johnson of falsifying attendance records at Marshall High School, and CPS placed a "Do Not Hire" notice in Johnson's file.

Turner, Starks and Johnson, who are African American, believe the Board discriminated against them on the basis of their race when it placed "Do Not Hire" notices in their files. Plaintiffs allege the Board did not place "Do Not Hire" notices in the files of other principals who were not African American but who engaged in similar attendance-record practices at other schools.  Plaintiffs further allege that the Inspector General targeted African American schools when he investigated attendance-record manipulation.  Plaintiffs allege that this was not the first time defendants have targeted African Americans for discipline.  They allege that in 2011 or 2012, CPS forced twenty African Americans (including plaintiffs Stark and Turner) to resign after falsely accusing them of "submitting fraudulent lunch forms."  (Am. Complt. p 8 ¶ 33(f)).

Finally, plaintiffs allege that they were jointly employed by CPS, i.e., defendant Board. In support of this conclusion, plaintiffs allege that they were required to follow the Board's rules and procedures.

Based on these allegations, plaintiffs seek relief under Title VII of the Civil Rights Act of 1964 (in Counts I, VI and XI) and under §1983 for violation of their Constitutional rights under the Equal Protection Clause (Counts II, VII and XII). Plaintiffs also seek relief under the Illinois Freedom of Information Act, 5 ILCS 140/1 *et seq* (Counts III, VIII and XIII) and for defamation (Counts IV, V, IX, X, XIV and XV). Defendants move to dismiss.

## II.    STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 & 681 (2009) (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously

4

agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

## III. DISCUSSION

### A. Plaintiffs' claims against the Inspector General's Office

Defendant Inspector General's Office moves to dismiss all claims against it, arguing that it is not a suable entity.

Rule 17(b)(3) of the Federal Rules of Civil Procedure provides that, for parties other than individuals and corporations, "[c]apacity to sue or be sued is determined" by "the law of the state where the court is located." Fed.R.Civ.P. 17(b)(1)-(3). Under Illinois law, to be a suable entity, a defendant must have a legal existence. *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 977 n. 2 (7th Cir. 2000).

The Inspector General's Office argues that it is part of the Board, rather than a separate entity. Generally, departments within a governing unit do not have a separate legal existence and, thus, are not suable. *See Williams v. Fairman*, Case No. 94 C 206, 1996 WL 164289 at *1 (N.D. Ill. Apr. 2, 1996); *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) ("An Illinois statute expressly provides that the county may be sued. . . . However, we have found no statutory or case authority supporting a direct action against subdivisions of these entities[.]"). Thus, for example, the Chicago Police Department is not a suable entity separate from the City of Chicago. *Courtney v. City of Chi.*, 439 Fed.Appx. 557, 558 (7th Cir. 2011).

In this case, it is clear, pursuant to statute, that the Board of Education for the City of Chicago is a suable entity. 105 ILCS 5/34-2 ("The district shall be a body politic and corporate by the name of 'Board of Education of the City of . . . . .' and by that name may sue and be sued

5

in all courts and places where judicial proceedings are had."). The same Illinois statute goes on to suggest that the Inspector General's Office is part of the Board, not a separate, suable entity. The statute reads, "The Inspector General and his office . . . shall be transferred to the jurisdiction of the board" and that the "Inspector General shall make recommendations to the board about the investigations." 105 ILCS 5/34-13.1. This leads the Court to conclude that the Inspector General's Office is not a suable entity separate from the Board of Education. *Cf. Ferguson v. Patton*, 369 Ill.Dec. 14, 24 (Ill. 2013) ("The office of the Inspector General is not, itself, a unit of local government under Illinois law . . . It is merely a department of the municipal government of the City of Chicago."); *Cunliffe v. Wright*, 51 F. Supp.3d 721, 730 (N.D. Ill. 2014) (dismissing claims against Inspector General in his official capacity as redundant to claims against the Board of Education of the City of Chicago).

Accordingly, the Court dismisses with prejudice plaintiffs' claims against the Inspector General's Office. Thus, Counts V, X and XV are dismissed with prejudice. Counts II, III, VII, VIII, XII and XIII are dismissed with prejudice as to defendant Inspector General's Office.

    **B.**     **Plaintiffs' Title VII claims**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin." 42 U.S.C. § 2000e-2(a).

Plaintiffs' Title VII claims are unusual. The crux of each plaintiff's Title VII claim is that the Board was discriminating against her on the basis of her race when it placed a "Do Not Hire" notice in her record at CPS. The effect of a "Do Not Hire" notice is that CPS will not

6

rehire any of these plaintiffs if any of them applies for a position in the future. One unusual aspect of plaintiffs' Title VII claim is that each alleges she is employed by an entity other than CPS. Still, each seeks to hold the Board liable as a joint employer. It is not clear why plaintiffs would try to hold defendants liable as a joint employer. Plaintiffs have not alleged that their actual employers have subjected them to any adverse employment actions, let alone adverse employment actions for which the Board would be liable as a joint employer.

Still, defendant Board moves to dismiss, and its main argument is that plaintiffs have not adequately alleged that the Board is their joint employer. Defendants cite *Love v. JP Cullen & Sons, Inc.* for the proposition that a Title VII plaintiff must always establish the existence of an employee-employer relationship. 779 F.3d 697, 701 (7th Cir. 2015). This reads too much into *Love*. The Seventh Circuit said the plaintiff in *Love* needed to "prove the existence of an employer-employee relationship," because that plaintiff was trying to hold a contractor liable for the actions of its subcontractor (plaintiff's actual employer) in terminating plaintiff's employment. *Love*, 779 F.3d at 701. Title VII, though, covers more than just termination of employment. Title VII also makes it unlawful to "fail or refuse to hire" a person because of her race. 42 U.S.C. § 2000e-2(a). Obviously, a plaintiff can prevail under Title VII on a claim that an employer failed or refused to hire her without establishing she had an employee-employer relationship with the employer who refused to hire her.

Nonetheless, the Court agrees that to the extent plaintiffs are attempting to hold the Board liable for their employers' actions on a joint-employer theory, plaintiffs must include sufficient allegations to make it plausible that the Board was a joint employer. Plaintiff has not done so. In *Love*, the Seventh Circuit explained that in considering whether a defendant was a joint employer, it would consider: (1) the five factors (the "*Knight* factors") set out in *Knight v.*

*United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991) to determine how much control the asserted joint employer exercised over the plaintiff; and (2) "the economic realities of the relationship." *Love*, 779 F.3d at 702. The *Knight* factors are: (1) "the extent to which the putative employer controlled or supervised the alleged employee;" (2) "the type of occupation and the nature of the skills required for the position in question;" (3) "whether the putative employer was responsible for the costs of 'equipment, supplies, fees, licenses, workplace, and maintenance of operations;'" (4) "whether the putative employer was responsible for providing payment and benefits;" and (5) "the length of the employee's job commitment and/or the expectations of the parties." *Love*, 779 F.3d at 702-05. Ultimately, in *Love*, the Seventh Circuit concluded that the defendant did not exercise sufficient control over plaintiff to be considered his indirect employer. *Love*, 779 F.3d at 705.

In this case, plaintiffs allege only that they were required to follow the Board's rules and policies. This allegation sheds no light on whether the Board could be considered a joint employer under the *Knight* factors and economic realities. Plaintiffs have not plausibly alleged that the Board was a joint employer.[2] To the extent plaintiffs are attempting to hold the Board liable for the actions of their employers as a joint employer, their claims are dismissed without prejudice and with leave to amend.

What remains of plaintiffs' Title VII claims is their allegations that the Board discriminated against them on the basis of their race when it placed "Do Not Hire" notices in their files. CPS does not argue that the placement of the notices, alone, could not constitute an actionable adverse employment action. Nor does CPS argue that a claim for failure to hire is not

---

[2] Defendant Board attached to its motion copies of the contracts between the Board and plaintiffs' employers. The Board argues that these documents demonstrate as a matter of law that the Board is not a joint employer. The Court does not consider documents outside of the pleadings on a motion to dismiss. Fed.R.Civ.P. 12(d).

8

ripe until a plaintiff actually applies and is rejected for a position. In this case, no plaintiff has alleged that she applied and was rejected for a position at CPS after the "Do Not Hire" notice was placed in her file. Plaintiff Johnson comes close. She alleges that she applied and was rejected for a position as a Principal of a school *before* the Board placed the "Do Not Hire" notice in her file. Defendant argues in its reply brief that Johnson did not include such a claim in her charge of discrimination and has, therefore, failed to exhaust her administrative remedies. Had defendant made the argument in its opening brief, the Court might have dismissed the claim for that reason, but the Court is not inclined to dismiss a claim based on an affirmative defense when the plaintiff has not had the opportunity to respond. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("arguments raised for the first time in a reply brief are waived").

Plaintiffs' Title VII claims (Count I, VI and XI) are dismissed as to their joint-employer theory with leave to amend.

### C. Plaintiffs' *Monell* claim

In Counts II, VII and XII, plaintiffs seek relief under § 1983 for violation of their Constitutional rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs allege the Board "engaged in a pattern and practice of discriminating against individuals who are African American." (Am. Compt. p. 6 ¶ 33; p 20 ¶ 35; p. 34 ¶ 36).

The Board seeks to dismiss on the grounds that plaintiff has not adequately alleged a claim under *Monell v. Department of Soc. Serv. of N.Y.*, 436 U.S. 658 (1978), where the Supreme Court set out the circumstances under which a municipality could be liable under § 1983 for constitutional violations. A municipality cannot be held liable under § 1983 based on *respondeat superior* liability. *Monell*, 436 U.S. at 691. Instead, a municipality can be liable only if the injury was the result of the municipality's policy or custom. *Monell*, 436 U.S. at 694.

To state a claim under *Monell* in order to hold the Board liable for Schuler's actions, plaintiffs must include sufficient factual allegations to allow a court "to draw the reasonable inference that the City established a policy or practice" of discriminating against African Americans. *McCauley v. City of Chi.*, 671 F.3d 611, 618 (7th Cir. 2011). Plaintiffs' boilerplate *Monell* allegations are disregarded. *McCauley*, 671 F.3d at 617 (citing *Iqbal*, 129 S.Ct. at 1915). What is left after disregarding the legal conclusions are plaintiff's allegations about two instances of alleged discrimination. First, plaintiffs allege that they were given "Do Not Hire" notices even though other principals who engaged in the same attendance practices (but who were not African American) were not given "Do Not Hire" notices. Second, plaintiffs allege that in 2011 or 2012, twenty African Americans (including Turner and Starks) were forced to resign from CPS after being falsely accused of submitting fraudulent lunch forms. Two instances are not enough to allege plausibly that the Board had a custom or policy of discriminating against African Americans.

Accordingly, Counts II, VII and XII are dismissed without prejudice as to defendant Board.

### D. Plaintiffs' FOIA claims against defendant Schuler

Defendant Schuler moves to dismiss plaintiffs' FOIA claims against him. He argues that plaintiffs have plead themselves out of court by attaching to their complaint documents which establish they cannot prevail on this claim.

Plaintiffs did not respond to this argument. Accordingly, their FOIA claims against defendant Schuler are deemed abandoned and dismissed with prejudice. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (affirming district court's grant of motion to dismiss where plaintiff failed to respond substantively and stating that "litigant effectively abandons

litigation by not responding to alleged deficiencies in a motion to dismiss"). Counts III, VIII and XIII are dismissed with prejudice as to defendant Schuler.

### E. Plaintiffs' claims for defamation.

In Counts IV, IX and XIV, plaintiffs allege that the Board defamed them by falsely accusing them of falsifying attendance records. The Board argues that these claims are barred by the Illinois Tort Immunity Act.

The Tort Immunity Act "adopted the general principle that local governmental units are liable in tort, but limited this liability with an extensive list of immunities based on specific government functions." *Barnett v. Zion Park Dist.*, 171 Ill.2d 378, 386 (Ill. 1996). Pursuant to the Tort Immunity Act:

> A local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material.

745 ILCS 10/2-107. The Tort Immunity Act defines a "local public entity" as including a "school board." 745 ILCS 10/1-206. Thus, the plain language of the Tort Immunity Act bars plaintiffs' defamation claims against the Board. The Board is also immune from suits for defamation under common law. *See Klug v. Chicago School Reform Bd. of Trustees*, 197 F.3d 853, 861 (7th Cir. 1999).

Plaintiffs, however, argue that the defamation claims are not barred, because plaintiffs have alleged defendant's defamatory actions were "malicious." The Court disagrees. First, the Tort Immunity Act does not exclude defamation where malice is alleged, and the Court will not write in such an exclusion where, as here, the language is not obviously limited to a subset of defamation claims. *Cf. Jane Doe-3 v. McClean Cty. Unit Dist. No. 5 Bd. of Dir.*, 362 Ill.Dec. 484, 497 (Ill. 2012) ("we reiterate that, where a provision of the Tort Immunity Act contains no

11

exception for willful and wanton conduct, we will not read one in"). In any case, the Seventh Circuit has concluded that immunity to claims for defamation "cannot be 'overcome by a showing of improper motivation or knowledge of the statement's falsity, including malice.'" *Horwitz v. Board of Ed. of Avoca School Dist. No. 37*, 260 F.3d 602, 618 (7th Cir. 2001) (quoting *Klug*, 197 F.3d at 861).

The Board is immune from suit on plaintiffs' defamation claims, so the Court grants the Board's motion to dismiss as to those claims. Counts IV, IX and XIV are dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants Schuler and the Inspector General's Office's motion to dismiss [52]. The Court grants in part and denies in part defendant Board's motion to dismiss [48]. Counts I, VI and XI are dismissed as to plaintiffs' joint-employer theory with leave to amend. Counts II, VII and XII are dismissed with prejudice as to defendant Inspector General's Office and without prejudice as to defendant Board. Counts III, VIII and XIII are dismissed with prejudice as to defendants Schuler and Inspector General's Office. Counts IV, V, IX, X, XIV and XV are dismissed with prejudice.

Plaintiffs are granted leave to file a second-amended complaint on or before July 30, 2018. Defendants shall answer or otherwise plead by August 27, 2018.

**SO ORDERED.**   ENTERED:  July 2, 2018

_____
**JORGE L. ALONSO**
**United States District Judge**